## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

SHONARI WARREN,

        Petitioner,

    v.

DEBRA SAUERS, et al.,

        Respondents.

CIVIL ACTION NO. 1:12-CV-01819

(RAMBO, J.)
(MEHALCHICK, M.J.)

## REPORT AND RECOMMENDATION

On September 11, 2012, the Court received and filed a petition for a writ of habeas corpus submitted pursuant to 28 U.S.C. § 2254, signed and dated by the Petitioner, Shonari Warren, on August 31, 2012. (Doc. 1). At the time of filing, Warren was incarcerated at SCI Forest, which is located in Forest County, Pennsylvania.

### I.   STATEMENT OF THE CASE

#### A.   PROCEDURAL HISTORY

On October 11, 2005, following a jury trial, Warren was convicted in the Court of Common Pleas of Dauphin County of first-degree murder, attempted murder, robbery, and related offenses. *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.).[1] Warren was sentenced that same day to serve a term of life plus 28 to 56 years

---

[1] In addition to the petition, a federal habeas court may take judicial notice of state court records, as well as its own records. *Minney v. Winstead*, No. 2:12-cv-1732, 2013 WL 3279793, at *2 (W.D. Pa. June 27, 2013); *see also Reynolds v. Ellingsworth*, 843 F.2d 712, 714 n.1 (3d Cir. 1988). Accordingly, in reviewing this petition, the Court has taken judicial notice of the publicly available dockets of criminal and collateral post-conviction proceedings in the Court of Common Pleas of Dauphin County, the Superior Court of Pennsylvania, and the Supreme Court of Pennsylvania, as well as its own records with respect to a previous federal habeas petition filed by Warren in this Court.

in prison. *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). Warren's conviction and sentence were affirmed on direct appeal to the Superior Court of Pennsylvania on August 18, 2006. *Commonwealth v. Warren*, Docket No. 1930 MDA 2005 (Pa. Super. Ct.). Warren filed a motion for re-argument on September 1, 2006, which was denied by the Superior Court on October 30, 2006. *Commonwealth v. Warren*, Docket No. 1930 MDA 2005 (Pa. Super. Ct.). Warren did not seek allocatur in the Supreme Court of Pennsylvania on direct appeal.

Warren filed a *pro se* PCRA petition in the Court of Common Pleas on October 22, 2007.[2] *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). Attorney William Shreve was appointed to represent him and file an amended PCRA motion. *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). After requesting and receiving several successive extensions of time to file the amended PCRA petition, Shreve requested an evidentiary hearing, which was held on January 22, 2009. (Doc. 31-7). *See also Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). On March 16, 2009, Shreve moved to withdraw from the case, apparently on the ground that he found no merit to any of Warren's PCRA claims. *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). On April 23, 2009, Shreve's motion was granted and Warren was permitted to proceed *pro se*. *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). On June 9, 2009, the Court of Common Pleas dismissed Warren's original *pro se* PCRA petition. *Commonwealth v. Warren*,

---

[2] Although Warren's *pro se* PCRA petition was docketed by the Court of Common Pleas on October 29, 2007, it appears to have been placed in the prison mail system on October 22, 2007, and therefore it must be deemed filed on that date. *See Commonwealth v. Little*, 716 A.2d 1287, 1289 (Pa. Super. Ct. 1998) (applying the prison mailbox rule to *pro se* PCRA petitions).

Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.).

Warren appealed the denial of his PCRA petition to the Superior Court of Pennsylvania *pro se*. *Commonwealth v. Warren*, Docket No. 1123 MDA 2009 (Pa. Super. Ct.). Following a brief remand to the Court of Common Pleas for a *Grazier* hearing on February 28, 2011, and the appointment of Attorney Johnathan Crisp on March 3, 2011, to represent Warren on appeal, the Superior Court affirmed the lower court's dismissal of Warren's PCRA petition on October 11, 2011. *Commonwealth v. Warren*, Docket No. 1123 MDA 2009 (Pa. Super. Ct.); *Commonwealth v. Warren*, Docket No. CP-22-CR-0002787-2004 (Dauphin County C.C.P.). *See generally Commonwealth v. Grazier*, 713 A.2d 81 (Pa. 1998) (requiring on-the-record determination that a PCRA petitioner's waiver of right to counsel is knowingly, intelligently, and voluntarily given). Through counsel, Warren petitioned the Supreme Court of Pennsylvania for allocatur, which was denied on July 2, 2012. *Commonwealth v. Warren*, Docket No. 835 MAL 2011 (Pa.).

In the meantime, while his counseled petition for allocatur remained pending before the Supreme Court of Pennsylvania, Warren filed a *pro se* federal petition for a writ of habeas corpus in this Court on December 8, 2011. (Case No. 1:11-cv-02348, Doc. 1). On June 21, 2012, the Court dismissed Warren's petition without prejudice for failure to exhaust state remedies as required by 28 U.S.C. § 2254(b). (Case No. 1:11-cv-02348, Doc. 13; *see also* Case No. 1:11-cv-02348, Doc. 11). Warren sought to appeal this decision, but the Third Circuit denied his *pro se* application for a certificate of appealability, effectively terminating his appeal, for lack of merit on January 4, 2013. (Case No. 1:11-cv-02348, Doc. 17).

Warren filed the instant *pro se* federal petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2254 on August 31, 2012,[3] together with a supporting memorandum of law. (Doc. 1; Doc. 2). On May 9, 2013, the Court denied the Respondents' initial motion to dismiss the petition as a successive petition and ordered them to file a partial response addressing potentially dispositive threshold issues such as jurisdiction, exhaustion, and timeliness. (Doc. 12). The Respondents filed their partial answer on June 3, 2013, asserting that the instant federal habeas petition is barred by the applicable one-year statute of limitations, and that two of the three habeas claims asserted by the petitioner are procedurally defaulted because Warren failed to exhaust these claims in previous state PCRA proceedings and the time for presenting them in state court has expired. (Doc. 13). On July 2, 2013, Warren filed a reply to the Respondents' partial answer, together with a supporting memorandum and exhibits, arguing that the statute of limitations should be equitably tolled and any procedural default should be excused due to ineffective assistance of PCRA counsel. (Doc. 14; Doc. 15; Doc. 16). On May 12, 2014, the Court ordered the Respondents to file a short brief addressing Warren's equitable tolling argument. (Doc. 19). On June 2, 2014, the Respondents filed their brief on equitable tolling. (Doc. 25). On August 12, 2014, the Court ordered the Respondents to brief the merits of Warren's various habeas claims. (Doc. 28). The Respondents filed their brief on the merits on September 11, 2014. (Doc. 31). On September 29, 2014, Warren filed his reply on the merits. (Doc. 35).

### B. HABEAS CLAIMS PRESENTED

The petition asserts that Warren is entitled to relief under 28 U.S.C. § 2254 for the following reasons:

---

[3] The instant petition was received and docketed by this Court on September 11, 2012, but it appears to have been deposited in the prison mail system on August 31, 2012, and thus effectively filed that day. *See* Rule 3(d), 28 U.S.C. foll. § 2254.

(1)      Warren was denied the effective assistance of counsel at trial because his trial counsel failed to move to suppress an out-of-court eyewitness identification based on an allegedly unduly suggestive photographic line-up;

(2)      Warren was denied the effective assistance of counsel at trial because his trial counsel failed to adequately impeach the testimony of prosecution witnesses Nicole Brown and William Brown; and

(3)      Warren was denied the effective assistance of counsel in post-conviction collateral proceedings because his initial-review PCRA counsel failed to adequately advance his claim regarding impeachment of the Browns' testimony in the Court of Common Pleas, and his appellate PCRA counsel declined to present the claim at all on appeal from the Court of Common Pleas to the Superior and Supreme Courts of Pennsylvania.

Warren asserted claims (1) and (2) in his *pro se* PCRA petition before the Court of Common Pleas. (Doc. 10-7, at 2–9). Although court-appointed counsel in the initial-review PCRA proceedings, Attorney Shreve, does not appear to have included claim (2) among the factual issues upon which his motion for an evidentiary hearing was based, the PCRA court considered both claims at the evidentiary hearing, and it explicitly addressed the merits of both claims in its memorandum opinion. (Doc. 31–7; Doc. 2, at 20–34). On appeal to the Superior Court of Pennsylvania, Warren's court-appointed appellate counsel, Attorney Crisp, raised only claim (1), and the Superior Court affirmed the lower court's denial of PCRA relief on the merits of claim (1). (Case No. 1:11-cv-02348, Doc. 10-8, at 27–50; Doc. 13-2, at 31–72). On a petition for allocatur to the Supreme Court of Pennsylvania, Attorney Crisp again raised only claim (1), and the Supreme Court summarily denied allocatur. (Case No. 1:11-cv-02348, Doc. 10-8, at 71–93). *Commonwealth v. Warren*, Docket No. 835 MAL 2011 (Pa.). Warren has raised claim (3) for the first time in the instant federal habeas petition.

## II.  Discussion

Over the course of these proceedings, the Respondents have advanced several different grounds for denying Warren's habeas claims. First, they argue that Warren's claims are barred

by the applicable one-year statute of limitations. Next, they argue that Warren's second and third claims are barred from consideration as procedurally defaulted because Warren failed to exhaust these claims in previous state PCRA proceedings and the time for presenting them in state court had expired. Finally, they argue that Warren's claims should be denied on the merits.

## A.  STATUTE OF LIMITATIONS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") established a one-year statute of limitations for the filing of federal habeas corpus petitions pursuant to 28 U.S.C. § 2254. *See* 28 U.S.C. § 2244(d). The statute also prescribes how the one-year limitation period is calculated, including the date on which the limitation period begins, 28 U.S.C. § 2244(d)(1), and the circumstances in which the limitation period may be tolled, 28 U.S.C. § 2244(d)(2).

### 1.  Calculation of the Applicable Limitation Period

Under the AEDPA, a prisoner generally must file any federal habeas corpus petition within one year of the date that his conviction "became final by the conclusion of direct review or the expiration of the time for seeking such review." *See* 28 U.S.C. § 2244(d)(1)(A). Where a petitioner does not pursue direct review of his conviction all the way to the Supreme Court of the United States, his conviction becomes final when the time for pursuing direct review in that Court, or in state court, expires. *Gonzalez v. Thaler*, 132 S. Ct. 641, 653–54 (2012). Here, the Superior Court of Pennsylvania affirmed Warren's conviction and sentence on August 18, 2006, and denied his timely motion for re-argument on October 30, 2006. Because Warren did not file a petition for allocatur in the Supreme Court of Pennsylvania, his conviction became final thirty days later on November 29, 2006. *See* Pa. R. App. P. 1113(a)(1).

Thus, absent any applicable tolling period, Warren had until November 29, 2007, to timely file his federal habeas petition for a writ of habeas corpus. The instant petition was filed nearly five years later on August 31, 2012.

### 2.   Statutory Tolling of the Limitation Period

A person in state custody may toll the running of the AEDPA's limitation period during the time in "which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). On October 22, 2007, Warren filed his *pro se* PCRA petition in the Court of Common Pleas, 327 days after his conviction became final. When Warren's PCRA petition was dismissed by the Court of Common Pleas, he appealed to the Superior Court. When the Superior Court affirmed the dismissal of his PCRA petition, Warren petitioned the Supreme Court of Pennsylvania for allocatur. On July 2, 2012, the Supreme Court of Pennsylvania denied allocatur and the limitation began to run once again for an additional period of 38 days (one year less 327 days), ending on August 9, 2012. *See generally Lawrence v. Florida*, 549 U.S. 327, 332 (2007). The instant petition was filed 22 days later, on August 31, 2012.

Accordingly, the instant petition is time-barred unless there are grounds for equitable tolling of the statute of limitations.

### 3.   Equitable Tolling of the Limitation Period

In addition to a period of statutory tolling, the petitioner may be entitled to equitable tolling of the statute of limitations. *See Holland v. Florida*, 560 U.S. 631, 645 (2010). "[A] 'petitioner' is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* 560 U.S. at 649 (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

The petitioner bears the burden of establishing that he is entitled to the benefit of the doctrine of equitable tolling. *Pace*, 544 U.S. at 418.

"The diligence required for equitable tolling purposes is reasonable diligence, not maximum, extreme, or exceptional diligence." *Ross v. Varano*, 712 F.3d 784, 799 (3d Cir. 2013) (citing *Holland*, 560 U.S. at 653). "This obligation does not pertain solely to the filing of the federal habeas petition, rather it is an obligation that exists during the period [the petitioner] is exhausting state court remedies as well." *LaCava v. Kyler*, 398 F.3d 271, 277 (3d Cir. 2005). "A determination of whether a petitioner has exercised reasonable diligence is made under a subjective test: it must be considered in light of the particular circumstances of the case." *Ross*, 712 F.3d at 799. A diligent prisoner is one who did "what he reasonably thought was necessary to preserve his rights . . . based on information he received[.]" *Munchinski v. Wilson*, 694 F.3d 308, 332 (3d Cir. 2012) (quoting *Holmes v. Spencer*, 685 F.3d 51, 65 (1st Cir. 2012)) (alterations in original).

Here, Warren appears to have acted with reasonable diligence at each step of the criminal and post-conviction proceedings that came before this petition. He timely filed his notice of direct appeal to the Superior Court, his PCRA petition in the Court of Common Pleas, his PCRA notice of appeal to the Superior Court, and his petition for allowance of a PCRA appeal to the Supreme Court of Pennsylvania. *Cf. Jenkins v. Superintendent of Laurel Highlands*, 705 F.3d 80, 89 (3d Cir. 2013). Moreover, although he waited 327 days before filing his initial PCRA petition, Warren "is not ineligible for equitable tolling simply because he waited until late in the limitations period to file his [PCRA] petition." *LaCava*, 398 F.3d at 277 (quoting *Valverde v. Stinson*, 224 F.3d 129, 136 (2d Cir. 2000) (three months left in limitations period)); *Jenkins*, 705 F.3d at 89 n.15 (less than 90 days left in limitation period)). Rather, the length (or

brevity) of the remaining limitations period is merely a "factor to be taken into consideration" in evaluating whether the petitioner's actions were reasonably diligent under the circumstances he faced. *See LaCava*, 398 F.3d at 277.

Warren appears to have been fully cognizant that he had only 38 days of the AEDPA's one-year limitations period left in which to file his federal habeas petition. Thus, on December 8, 2011, shortly after filing his petition for allocatur in the state supreme court, Warren protectively filed his initial federal habeas petition in this Court, explicitly requesting that his federal habeas petition be stayed and held in abeyance because he feared he would be unable to meet the federal filing deadline if or when his state allocatur petition was denied. (*See* Case No. 1:11-cv-02348, Doc. 1, at 11). When his initial federal habeas petition was dismissed without prejudice for failure to exhaust state remedies on June 21, 2012, Warren immediately filed a notice of appeal on June 29, 2012, and that case remained pending before the Third Circuit until well after this second federal habeas proceeding was initiated. (*See* Case No. 1:11-cv-02348, Doc. 15).

Notwithstanding the ongoing appellate proceedings on his initial federal habeas petition, Warren continued to await a determination on allocatur by the state supreme court. When the state supreme court denied his petition for allocatur on July 2, 2012, notice of that decision was sent to his court-appointed counsel, Attorney Crisp, as a matter of course. But Warren claims that his counsel had ceased communication with him and failed to inform him of the denial of his allocatur petition. (Doc. 16, at 5). At some point, Warren himself wrote directly to the prothonotary of the state supreme court, inquiring about the status of his case. On August 20, 2012, the prothonotary's office responded, advising him that allocatur had been denied on July 2, 2012, and that notice of the court's decision was sent to Attorney Crisp that same day. (Doc.

1-1, at 1). Warren claims to have received the prothonotary's response in the mail on August 23, 2012. (Doc. 16, at 6). Eight days later, on August 31, 2012, Warren deposited his second federal habeas petition, together with several exhibits and a supporting memorandum, in the prison mail system for filing with this Court. (Doc. 1; Doc. 2).

In sum, knowing that he had a relatively short period of only 38 days in which to react to an adverse decision by the state supreme court, Warren protectively filed a premature federal habeas petition and requested, unsuccessfully, that federal habeas proceedings be stayed while he exhausted state remedies, he promptly appealed the dismissal of his initial federal habeas petition, and, apparently having received no response from his court-appointed PCRA counsel, he wrote directly to the prothonotary to determine the status of his PCRA proceedings before the state supreme court. Once he learned of the denial of allocatur, he acted quickly to prepare and submit the instant federal habeas petition, depositing it in the prison mail system just eight days later. Under the circumstances presented, it is clear that Warren did not "sleep[] on his rights," but rather acted with reasonable diligence to protect his rights. *See Jenkins*, 705 F.3d at 89; *Munchinski*, 694 F.3d at 331.

As noted above, in addition to reasonable diligence, a petitioner seeking equitable tolling must show "that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland* 560 U.S. at 649. Here, Warren claims that his court-appointed counsel, Attorney Crisp, abandoned him, ceasing all communication. Most importantly, when the state supreme court sent notice to Attorney Crisp that Warren's petition for allocatur had been denied on July 2, 2012, Warren claims that Attorney Crisp failed to communicate that critical development to him, thus preventing him from filing the instant habeas petition before expiration of the AEDPA limitations period 38 days later. Instead, Warren was left to discover

the disposition of his allocatur petition on his own, causing him to file the instant petition 22 days after the limitations period had expired.

It is well established that "garden variety" claims of attorney negligence, such as miscalculation of a filing deadline, inadequate research, or other mistakes, do not rise to the level of "extraordinary circumstances" that warrant equitable tolling. *See Holland*, 560 U.S. at 651–52; *Lawrence*, 549 U.S. at 336–37; *LaCava*, 398 F.3d at 276. But more egregious attorney misconduct, such as an attorney's abandonment of his client, can create the "extraordinary circumstances" required for equitable tolling. *See Holland* 560 U.S. at 652; *Ross*, 712 F.3d at 803; *Gibbs v. LeGrand*, __ F.3d ___, 2014 WL 4627991, at *3 (9th Cir. Sept. 17, 2014); *see also Maples v. Thomas*, 132 S. Ct. 912, 923–24 (2012). An attorney's total failure to communicate with his client, particularly where the attorney has failed to inform his client that his case has been decided and that decision implicates the client's ability to bring further proceedings, can constitute attorney abandonment, thereby supplying "extraordinary circumstances" justifying equitable tolling of the statute of limitations. *See Holland*, 560 U.S. at 651–52; *Ross*, 712 F.3d at 803; *Gibbs*, 2014 WL 4627991, at *4; *see also Holland*, 560 U.S. at 659–60 (Alito, J., concurring) ("Common sense dictates that a litigant cannot be held constructively responsible for the conduct of an attorney who is not operating as his agent in any meaningful sense of that word."); *Maples*, 132 S. Ct. at 923–24 ("[U]nder agency principles, a client cannot be charged with the acts or omissions of an attorney who has abandoned him. Nor can a client be faulted for failing to act on his own behalf when he lacks reason to believe his attorneys of record, in fact, are not representing him.").

In support of his claim of attorney abandonment, Warren has submitted a declaration under 28 U.S.C. § 1746, in which he stated, under penalty of perjury, that after filing the

allocatur petition in the state supreme court on November 7, 2011, "Attorney Crisp took no further action, ceased all communication with [Warren], and failed to respond to [Warren's] written requests concerning the status of [his] case." (Doc. 16, at 5). Warren's declaration further stated that he was forced to write directly to the state supreme court to inquire about the status of his case, and that he first received notice of the state court's denial of allocatur in a letter from the prothonotary, dated August 20, 2012, but received by Warren on August 23, 2012. (Doc. 16, at 5–6; *see also* Doc. 1-1, at 1 (photocopy of prothonotary's letter)). In response, the Respondents contend only that Warren has failed to sufficiently *allege* extraordinary circumstances that would justify equitable tolling. (Doc. 25). Despite an invitation to do so, they have declined to present any factual evidence in support of their position. (*See* Doc. 16; Doc. 25).

On the record before the Court, Warren has met his burden of demonstrating both reasonable diligence and extraordinary circumstances sufficient to warrant equitable tolling of the AEDPA statute of limitations. Accordingly, the petition is not time-barred.

### B.   CLAIM 3: INEFFECTIVE ASSISTANCE OF PCRA COUNSEL

In his third claim for habeas relief, Warren claims that he was denied the effective assistance of counsel in state court PCRA proceedings. This claim is raised for the first time in the instant federal habeas petition. Warren has conceded in subsequent filings, however, that a freestanding claim of ineffective assistance of PCRA counsel is not cognizable in federal habeas proceedings. (Doc. 15, at 13 n.5). *See generally* 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."); *see also Pennsylvania v. Finley*, 481 U.S. 551, 555–56 (1987) (no constitutional right to counsel in collateral post-

conviction proceedings); *Coleman v. Thompson*, 501 U.S. 722, 755 (1991) (no constitutional right to counsel on appeal from initial collateral post-conviction proceedings).

Accordingly, it is recommended that the petition be denied with respect to Warren's ineffective assistance of PCRA counsel claim on the ground that this claim is not cognizable on federal habeas review.

### C. CLAIM 2: IMPEACHMENT OF CERTAIN PROSECUTION WITNESSES

#### 1. Exhaustion of Available State Remedies

Generally, for this Court to address the merits of a habeas petition, all of the claims contained in the petition must be exhausted. 28 U.S.C. § 2254(b). Ordinarily, "[t]he exhaustion requirement is satisfied only if the petitioner can show that he fairly presented the federal claim at each level of the established state-court system for review." *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004); *see also O'Sullivan v. Boerckel*, 526 U.S. 838, 844–45 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts . . . ."). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway*, 355 F.3d at 714 (quoting *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)). A federal claim may be exhausted by presenting it either on direct appeal or in post-conviction PCRA proceedings. *See O'Sullivan*, 526 U.S. at 844 (citing *Brown v. Allen*, 344 U.S. 443, 447 (1953)). In Pennsylvania, a federal claim may be exhausted by presenting it to the Superior Court of Pennsylvania, either on direct appeal from a state criminal conviction or on appeal from a PCRA court's denial of post-conviction relief. *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *see also In re Exhaustion of State Remedies in Criminal and Post-Conviction*

13

*Relief Cases*, Order No. 218, 30 Pa. Bull. 2582 (Pa. May 9, 2000); Pa. R. App. P. 1114 historical notes (Order of May 9, 2000).

Warren's second claim is that he was denied the effective assistance of counsel at trial because his retained counsel failed to adequately impeach the testimony of certain prosecution witnesses. Although this claim was neither raised by his counsel of record (Case No. 1:11-cv-02348, Doc. 10-8, at 27–50; Case No. 1:11-cv-02348, Doc. 10-8, at 71–93) nor addressed by the Superior Court (Doc. 31, at 31–44), Warren contends that he presented it to the Superior Court in various *pro se* briefs he submitted as a supplement to the counseled brief filed by his attorney. These *pro se* briefs are not present in the record before this Court, but their contents are immaterial because, under Pennsylvania law, when a litigant is represented by counsel, the state court will not entertain *pro se* briefs, and thus any claims presented by a represented litigant exclusively in *pro se* filings are not "fairly presented" to the state court. *See Hurlburt v. Lawler*, No. 1:CV-03-0665, 2008 WL 2973049, at *12 (M.D. Pa. Aug. 4, 2008) (Rambo, J.) (discussing *Commonwealth v. Ellis*, 626 A.2d 1137, 1141 (Pa. 1993)).

Nevertheless, if Warren were to return to state court now to attempt to exhaust this claim in a new PCRA petition, his petition would be untimely and the matter would be dismissed pursuant to 42 Pa. Cons. Stat. Ann. § 9545(b). Under this state statute, a PCRA petition must be filed "within one year of the date the judgment becomes final," subject to certain enumerated exceptions not applicable here. *See* 42 Pa. Cons. Stat. Ann. § 9545(b). "When a claim is not exhausted because it has not been 'fairly presented' to the state courts, but state procedural rules bar the applicant from seeking further relief in state courts, the exhaustion requirement is satisfied because there is 'an absence of available State corrective process.'" *McCandless*, 172 F.3d at 260 (quoting 28 U.S.C. § 2254(b)(1)(B)(i)); *see also Coleman*, 501 U.S. at

732 ("A habeas petitioner who has defaulted his federal claims in state court meets the technical requirements for exhaustion; there are no state remedies any longer 'available' to him."). Thus, for the purpose of this petition, Warren's claim is technically exhausted. *See* Hurlburt, 2008 WL 2973049, at *12.

### 2.  **Procedural Default**

"Even so, this does not mean that a federal court may, without more, proceed to the merits. Rather, claims deemed exhausted because of a state procedural bar are procedurally defaulted . . . ." *Lines v. Larkins*, 208 F.3d 153, 160 (3d Cir. 2000). Generally, a federal court will not review a claim that is procedurally defaulted. *Johnson v. Folino*, 705 F.3d 117, 127 (3d Cir. 2013). A claim is procedurally defaulted when "a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule." *Coleman*, 501 U.S. at 750. The one-year statute of limitations applicable to state PCRA proceedings has been held to be such an independent and adequate state procedural rule. *See Glenn v. Wynder*, 743 F.3d 402, 409 (3d Cir. 2014); *Banks v. Horn*, 49 F. Supp. 2d 400, 403–07 (M.D. Pa. 1999). *See generally Bronshtein v. Horn*, 404 F.3d 700, 708–10 (3d Cir. 2005) (discussing history and strict application of the PCRA statute of limitations since 1999).

Notwithstanding procedural default, a federal court may review a habeas claim where the petitioner can demonstrate cause for the default and actual prejudice as a result, or that failure to review the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *McCandless*, 172 F.3d at 260. It is the petitioner's burden to demonstrate circumstances excusing procedural default. *See Sweger v. Chesney*, 294 F.3d 506, 520 (3d Cir. 2002); *see also Coleman*, 501 U.S. at 750; *Lines*, 208 F.3d at 160. To demonstrate "cause" for a procedural default, the petitioner must show that "some objective factor external to the [petitioner's]

defense impeded [his] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). Meanwhile, to demonstrate "actual prejudice," the petitioner must show "not merely that the errors at . . . trial created a *possibility* of prejudice, but that they worked to his *actual* and substantive disadvantage, infecting his entire trial with error of constitutional dimensions." *Carrier*, 477 U.S. at 494 (quoting *United States v. Frady*, 456 U.S. 152, 270 (1982) (alteration and emphasis in original). Alternatively, to show that a fundamental miscarriage of justice will occur if the claims are not reviewed, a petitioner must present new evidence that he is actually innocent of the crime for which he has been convicted. *Cristin v. Brennan*, 281 F.3d 404, 412 (3d Cir. 2002); *see also Schlup v. Delo*, 513 U.S. 298, 327 (1995) ("[A] petitioner must show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.").

Warren contends that his procedural default of this claim should be excused because he meets the "cause and prejudice" exception.[4] He argues that his procedural default should be excused because the failure of appointed counsel to advance this claim in initial and appellate PCRA proceedings constituted ineffective assistance of counsel, which in turn prevented him from properly exhausting this claim.

In a recent decision, the Supreme Court of the United States recognized that, under certain circumstances, the procedural default of an ineffective assistance of trial counsel claim may be excused where the default was caused, in turn, by ineffective assistance of counsel in post-conviction collateral proceedings. *See Martinez v. Ryan*, 132 S. Ct. 1309, 1315–21 (2012). Specifically, the *Martinez* Court held that:

---

[4] Warren does not contend that failure to review this claim will result in a fundamental miscarriage of justice.

[A] procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

*Martinez*, 132 S. Ct. at 1320.

The *Martinez* Court explicitly limited its holding to cases where state procedural law provided that "claims of ineffective assistance of trial counsel *must* be raised in an initial-review collateral proceeding" — that is, in states like Arizona, where state procedural law explicitly prohibited the adjudication of ineffective assistance claims on direct appeal. *Martinez*, 132 S. Ct. at 1320. Shortly thereafter, the Supreme Court revisited its *Martinez* holding, extending it to apply not only to cases where state procedural law expressly prohibited ineffective assistance claims on direct appeal, but also where "state procedural framework, by reason of its design and operation, makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal." *Trevino v. Thaler*, 133 S. Ct. 1911, 1921 (2013). The Third Circuit has subsequently examined Pennsylvania procedural law and found that *Martinez* applies in Pennsylvania. *Cox v. Horn*, 757 F.3d 113, 124 n.8 (3d Cir. 2014).

Warren has advanced two alternative "causes" for his default: ineffective assistance of his initial PCRA counsel, Attorney Shreve, and ineffective assistance of his appellate PCRA counsel, Attorney Crisp. In particular, Warren argues that: (a) Attorney Shreve was ineffective for failing to include this second claim of trial-counsel ineffectiveness in his motion for an evidentiary hearing during initial PCRA proceedings before the Court of Common Pleas; and (b) Attorney Crisp was ineffective for failing to raise the same issue in appellate briefs during appellate PCRA proceedings before the Superior and Supreme Courts of Pennsylvania.

A particular nuance of the *Martinez* decision is implicated with respect to the latter

"cause" claimed by Warren. In *Martinez*, the Supreme Court explicitly distinguished between finding cause based on ineffective assistance of counsel at *initial-review* collateral proceedings and at *appellate* collateral proceedings. *See Martinez*, 132 S. Ct. at 1320. Under *Martinez*, procedural default may be excused when caused by ineffective assistance of counsel during the *initial* PCRA proceedings before the Court of Common Pleas, which effectively constitutes a "a prisoner's 'one and only appeal' as to an ineffective-assistance [of trial counsel] claim." *See Martinez*, 132 S. Ct. at 1315, 1318; *see also Vaughter v. Fisher*, Civil Action No. 12-00493, 2014 WL 1152540, at *10 (E.D. Pa. Mar. 24, 2014) (discussing distinction between initial PCRA and appellate PCRA proceedings under *Martinez*); *Glenn v. Wynder*, Civil Action No. 06-513, 2012 WL 4107827, at *43 (W.D. Pa. Sept. 19, 2012) (same). But the *Martinez* rule does not apply to allegedly deficient performance by counsel during *appellate* PCRA proceedings before the Superior and Supreme Courts of Pennsylvania. *See Martinez*, 132 S. Ct. at 1320 ("The holding in this case does not concern attorney errors in . . . appeals from initial-review collateral proceedings . . . ."); *see also Vaughter*, 2014 WL 1152540, at *10; *Glenn*, 2012 WL 4107827, at *43. Instead, errors by appellate PCRA counsel fall under the rule established decades earlier in *Coleman* that a criminal defendant has no right to counsel on appeal from initial-review collateral proceedings, and therefore counsel's ineffectiveness on any such appeal cannot constitute cause excusing procedural default. *See Coleman*, 501 U.S. at 755; *see also Martinez*, 132 S. Ct. at 1320; *Vaughter*, 2014 WL 1152540, at *10; *Glenn*, 2012 WL 4107827, at *43. Accordingly, as a matter of law, the allegedly deficient performance of Warren's appointed counsel in appellate PCRA proceedings, Attorney Crisp, cannot constitute cause sufficient to excuse the procedural default of his second claim.

Warren's first claimed "cause," however, falls squarely within the scope of the *Martinez*

rule. Warren contends that Attorney Shreve was ineffective because he failed to include the impeachment-related ineffective-assistance claim among the handful of issues for which he sought an evidentiary hearing in Warren's initial PCRA proceedings before the Court of Common Pleas.

Under *Martinez*, the failure of a federal habeas petitioner's counsel to raise an ineffective assistance of trial counsel claim in an initial-review collateral proceeding can constitute "cause" if: (1) PCRA counsel's failure itself constituted ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668, 687 (1984); and (2) the underlying ineffective assistance of trial counsel claim is "a substantial one," meaning that "the claim has some merit." *Martinez*, 132 S. Ct. at 1319; *see also Glenn*, 743 F.3d at 410. "Under *Strickland*, courts are precluded from finding that counsel was ineffective unless they find both that counsel's performance fell below an objectively unreasonable standard, and that the defendant was prejudiced by that performance." *Marshall v. Hendricks*, 307 F.3d 36, 85 (3d Cir. 2002).

In this case, however, even assuming *arguendo* that Attorney Shreve's performance was objectively unreasonable, his failure to include Warren's second habeas claim among the handful of issues for which he sought an evidentiary hearing did not constitute ineffective assistance of counsel under *Strickland* because it simply did not prejudice Warren in any fashion. At the evidentiary hearing, Warren was permitted to address all of the issues raised in his *pro se* petition, despite his counsel's failure to include all of them in the motion itself. Warren was permitted to provide testimony on this particular claim. (Doc. 31-7, at 23–26). Attorney Shreve elicited testimony on the issue from Warren's trial counsel, Attorney John Elbert, as well. (Doc. 31-7, at 52–54). Warren was permitted to present additional argument on this claim to the court. (Doc. 31-7, at 60–61). And ultimately, the initial PCRA court expressly considered

and rejected this claim on its merits in its memorandum opinion. (Case No. 1:11-cv-02348, Doc. 2, at 27–29). Based on this, there is simply nothing in the record to suggest that the decision reached by the initial PCRA court would reasonably likely have been different absent the alleged error by Attorney Shreve. *See Strickland*, 466 U.S. at 696. Accordingly, the allegedly deficient performance of Warren's appointed counsel in initial PCRA proceedings, Attorney Shreve, cannot constitute cause sufficient to excuse the procedural default of his second claim.

Accordingly, it is recommended that the petition be denied with respect to Warren's ineffective assistance of trial counsel claim concerning impeachment of the testimony of prosecution witnesses Nicole Brown and William Brown on the ground that it is barred by procedural default.

### D. CLAIM 1: MOTION TO SUPPRESS OUT-OF-COURT IDENTIFICATION

A federal court may not grant relief on a habeas claim previously adjudicated on the merits in state court unless that adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d).

In drafting this statute, Congress "plainly sought to ensure a level of 'deference to the determinations of state courts,' provided those determinations did not conflict with federal law or apply federal law in an unreasonable way." *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *see also Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013). Consequently, "state-court judgments must be upheld unless, after the closest examination of the state-court judgment, a federal court is firmly convinced that a federal constitutional right has been violated." *Williams*, 529 U.S. at

387. "A federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be [objectively] unreasonable." *Williams*, 529 U.S. at 411; *see also Eley*, 712 F.3d at 846. Moreover, any factual findings by the state court are presumed to be correct, and the petitioner bears the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Burt v. Titlow*, 134 S. Ct. 10, 15 (2013); *Eley*, 712 F.3d at 846. Finally, because the Supreme Court of Pennsylvania summarily refused Warren's petition for allocatur, this Court looks to the disposition of his PCRA appeal to the Superior Court of Pennsylvania as the last reasoned state judgment on this claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991).[5]

Warren's first claim for habeas relief alleges that trial counsel was ineffective because he failed to move to suppress an out-of-court identification by the surviving victim based on an unduly suggestive photographic line-up. In affirming the initial PCRA court's denial of PCRA

---

[5] The Court notes that the Third Circuit denied Warren's *pro se* petition for a certificate of appealability with respect to his first federal habeas petition on the merits, stating unequivocally that "[Warren]'s claim that his trial counsel was ineffective for failing to move to suppress the out-of-court identification made by the surviving victim lacks merit because [Warren] did not establish that, in light of the other, overwhelming evidence against him, he was prejudiced by counsel's alleged ineffectiveness." (Case No. 1:11-cv-02348, Doc. 17 (citing *Strickland*, 466 U.S. at 687, 694)). Under the law of the case doctrine — specifically, under the mandate rule — lower federal courts are bound to honor rulings in the same case by superior courts. *See Casey v. Planned Parenthood of S.E. Pa.*, 14 F.3d 848, 856–57 (3d Cir. 1994). But circuit law is unclear whether a successive habeas petition such as this one is the continuation of a single ongoing case, rather than a separate and distinct case, under the law of the case doctrine, or if the law of the case doctrine even applies to habeas petitions at all. *See United States v. Roche-Moreno*, No. 1:07-CR-0191, 2011 WL 483996, at *4 & n.7 (M.D. Pa. Feb. 7, 2011) (discussing circuit split and absence of precedential Third Circuit case law on whether the law of the case doctrine applies to habeas petitions at all); *see also Alaimalo v. United States*, 645 F.3d 1042, 1050 (9th Cir. 2011) (noting circuit split as to whether to apply the law of the case doctrine to successive habeas petitions). It is unnecessary to resolve this issue, however, because the outcome is the same for this claim even if addressed on its merits.

relief, the Superior Court rejected this claim on its merits, applying the Pennsylvania standard for judging ineffectiveness claims set forth in *Commonwealth v. Pierce*, 527 A.2d 973, 975–76 (Pa. 1987), which the Third Circuit and this Court have previously found to be substantively identical to the federal ineffectiveness standard enunciated by the Supreme Court of the United States in *Strickland v. Washington*, 466 U.S. 668 (1984). *See Boyd v. Waymart*, 579 F.3d 330, 334 n.2 (3d Cir. 2009); *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000); *Showers v. Beard*, 586 F. Supp. 2d 310, 321–22 (M.D. Pa. 2008). Accordingly, this Court may not grant relief unless it determines that the state appellate court's decision on the merits was an unreasonable application of *Strickland*, or that it was based on "unreasonable factual determinations when deciding whether the petitioner received constitutionally effective counsel." *Showers*, 586 F. Supp. 2d at 322.

The Superior Court of Pennsylvania considered Warren's ineffectiveness claim and held that he satisfied neither the "performance" nor the "prejudice" prong of the two-part *Strickland* test. *See generally Marshall*, 307 F.3d at 85 (discussing applicable standards for both prongs). The state appellate court found that

> trial counsel had a reasonable basis for his decision not to file a motion to suppress the out-of-court identification. [Warren]'s trial counsel, Attorney Elbert, testified at the PCRA hearing that he did not file the suppression motion because "[i]t has been my experience that the testimony would not — his identification would not have been suppressed. The best we could have hoped for at such a hearing would have been that he would testify to exactly what he said, that he thought he was 75 percent sure. I wanted to bring that out in front of a jury that he was only 75 percent sure." In fact, Attorney Elbert did vigorously cross-examine [the surviving victim] on this issue during trial.
>
> (Doc. 13-2, at 42 (citations omitted)).

The state court record supports these factual findings. (*See* Doc. 31-7, at 34–35 (Attorney Elbert's testimony); Doc. 31-3, at 99–113 (surviving victim's testimony)). The state court further

found that

> [Warren] was not prejudiced by counsel's alleged inaction of failing to suppress the out-of-court identification by [the surviving victim]. Even without the out-of-court identification, there is overwhelming evidence of record sufficient to establish that [Warren] was the assailant. [The surviving victim] positively identified [Warren] as the assailant during the preliminary hearing and again at trial. [Warren]'s roommates, Nicole and William Brown, testified that [Warren] told them that he robbed [both victims] and shot them because they would not give him any money. William Brown testified that he found a bullet left in the toilet in the bathroom he shared with [Warren], which Mr. Brown took and later threw into a grass field around the [medical facility] where Nicole Brown worked. The bullet was later recovered by the Harrisburg Police and was determined to be consistent with those recovered from the victim and at the crime scene. Additionally, there was the testimony of . . . a federal prison inmate, who testified that he and [Warren] had a conversation in the Dauphin County Prison law library during which [Warren] told [the federal inmate] that he did in fact shoot and kill the decedent. Given the totality of the evidence, we cannot conclude that there is a reasonable probability that, but for counsel's failure to seek suppression of the out-of-court identification, the outcome of the proceeding would have been different.

> (Doc. 13-2, at 42–43 (citations omitted)).

The state court record supports these factual findings. (*See* Doc. 31-3, at 98 (surviving victim's testimony); Doc. 31-2, at 91–96 (Nicole Brown's testimony); Doc. 31-3, at 3, 19–27 (William Brown's testimony); Doc. 31-4, at 39 (forensic examiner's testimony); Doc. 31-4, at 55 (federal inmate's testimony).

When a federal habeas petitioner advances an ineffective assistance of counsel claim that a state court has already rejected on the merits, he is faced with "the doubly deferential judicial review that applies to a *Strickland* claim evaluated under the § 2254(d)(1) standard." *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009). Under this "doubly deferential" standard, the Court must "give[] both the state court and the defense attorney the benefit of the doubt." *Burt*, 134 S. Ct. at 13. Indeed, a federal habeas court is "required not simply to give the attorney the benefit of the doubt, but to affirmatively entertain the range of possible reasons petitioner's counsel may have

had for proceeding as he did." *Branch v. Sweeney*, 758 F.3d 226, 235 (3d Cir. 2014) (quoting *Cullen v. Pinholster*, 131 S. Ct. 1388, 1407 (2011)) (alterations omitted). Based on the record before the state appellate court, there is nothing to suggest that the state court unreasonably determined that trial counsel's decision was objectively reasonable and that prejudice was lacking, nor is there anything to suggest an unreasonable determination of the facts by the state court. *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) ("[I]t is the habeas applicant's burden to show that the state court applied *Strickland* to the facts of the case in an objectively unreasonable manner.").

Accordingly, it is recommended that the petition be denied on the merits with respect to Warren's ineffective assistance of trial counsel claim concerning suppression of the surviving victim's out-of-court identification of Warren as his assailant.

## III. RECOMMENDATION

Based on the foregoing, it is recommended that the Petition (Doc. 1) be **DENIED** and **DISMISSED WITH PREJUDICE**. It is further recommended that the Court decline to issue a certificate of appealability, as the Petitioner has failed to demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Dated: October 8, 2014        *s/ Karoline Mehalchick*
                                    **KAROLINE MEHALCHICK**
                                    **United States Magistrate Judge**

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

SHONARI WARREN,

          Petitioner,

    v.

DEBRA SAUERS, et al.,

          Respondents.

CIVIL ACTION NO. 1:12-CV-01819

(RAMBO, J.)
(MEHALCHICK, M.J.)

**NOTICE**

    **NOTICE IS HEREBY GIVEN** that the undersigned has entered the foregoing **Report and Recommendation** dated **October 8, 2014**. Any party may obtain a review of the Report and Recommendation pursuant to Rule 72.3, which provides:

> Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636(b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge.  The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

**Dated: October 8, 2014**

*s/ Karoline Mehalchick*
**KAROLINE MEHALCHICK
United States Magistrate Judge**